Atkinson, J.,
delivered the opinion of the court.
This case was formerly, heard and disposed of January 13, 1913, a majority of the court deciding that the plaintiff was entitled to recover a judgment against the United States for the sum of $130.50, that being the amount claimed in his petition. Upon motion of defendants for a new trial and for amendment of findings of fact, said motion was allowed, and the court ordered amendments to the findings and directed the dismissal of plaintiff’s petition.
The amended findings show that plaintiff was a rural delivery mail carrier in the State of New York; that he, from July 1, 1907, to December 1, 1909, was paid $810 per year for his services as such carrier, based upon a regulation of the.Post Office Department on the estimated length of the *483 route necessary to be traveled daily (except Sundays) in the performance of his duties; that said distance was estimated to be 21§ miles; that plaintiff', of his own motion, in September, 1909, had the route measured, which proved to be 22^ miles in length; that the matter was referred to an inspector of the department, who, on November 11, 1909, reported that said measurement was correct, and from December 1, following, plaintiff was paid on the basis of the increased distance, viz, at the rate of $864 per year. He brings this suit to recover the difference in salary between $810 and $864 per annum from July 1, 1901, to December 1, 1909, which amounts to $130.50.
The only question to be determined is whether, under the laws and regulations governing the rural mail delivery service, the Government is liable for the alleged “ back pay ” for which plaintiff sues.
The act of April 21, 1902 (32 Stats., 107), authorized the Postmaster General to classify the Rural Free Delivery Mail Service and to fix the salaries of carriers not to exceed $600 per annum.
The appropriation act of April 28, 1904 (33 Stats., 429), provided that the salaries of rural mail carriers should not exceed $120 per year on and after July 1, 1904, and the act of March 2, 1901 (34 Stats., 1205), fixed the maximum salaries on and after July 1,1907, at not exceeding $900.
The Postmaster General, acting under the discretion authorized by the act of April 21,1902, sufra, adopted a schedule of the length of the routes as a basis of fixing the compensation of the carriers. For example, on routes not less than 20 miles in length, $600'; on routes not less than 16 and under 20, $500, and so on; but in no event should the compensation exceed the limits fixed by the statutes.
The schedule now in force, as shown by the records of the department, follows:
24 miles and over-$900
22 to 24 miles_ 804
20 to 22 miles_ 810
38 to 20 miles!- 720
16 to 18 miles- 630
14 to 16 miles- 540
*484 12 to 14 miles_ 504
10 to 12 miles_1_ 46S
8 to 10 miles_ 432
6 to 8 miles___ 396
It appears that in laying out free-delivery mail routes fixed lines of travel are followed. The lengths of the routes are arrived at by careful estimates made by agents of the department, and it has never been the custom of the department to fix absolutely the length of the routes; but as in the case at bar, when an exact measurement has been made and verified, it has invariably been adopted. Hence it can not justly be contended that the Government presumes to guarantee the precise length of any delivery route. Distances are fixed upon the best information obtainable, and carriers are paid accordingly. This course was adhered to in the case now in hearing.
Subsequent to April, 1906, the practice of the Post Office Department in adjusting the salaries of rural delivery carriers upon more careful measurements of the lengths of routes was to make increases in salaries effective the first day of the succeeding month, and in one or more instances, where a route had been found greater than the estimated distance fixed by the department, increased pay was allowed for past service. Inasmuch as the department had not undertaken to determine the exact lengths of rural routes, it is contended that, in cases where distances have been found by actual measurement to be increased, the department would not be justified in allowing increased compensation from a prior date, and this rule is adhered to.
We find nothing in any of the acts of Congress to which we have already referred relating to the salaries of rural delivery mail carriers which prescribes in what manner the same shall be classified or what salaries shall be paid, except that they shall not exceed certain fixed amounts. The matter of fixing and adjusting the same, therefore, is left exclusively to the Postmaster General, who is restricted, as we have shown, only to the maximum salaries fixed by the several statutes.
A careful examination of the departmental regulations fixing the basis of salaries for rural route mail carriers does *485 not impress our minds as being inequitable or unreasonable. Had plaintiff’s route been a small fraction below 22 miles in length, his salary would, under the departmental regulations, have been the same as the amount he was paid, because the rate of compensation was the same on routes from 20 to 22 miles in length; and it is likewise the same when the distance is above 22 and under 24 miles. It was shown by actual measurement that the length of plaintiff’s route is one-tenth of a mile greater than 22 miles, and he was paid, since the actual length of the route was ascertained, the same compensation as could be allowed if he were required to travel daily the full 24 miles.
It is contended by plaintiff that there exists an implied contract between the Government and himself guaranteeing, or impliedly guaranteeing, the exact length of the route over which he was required to travel. We can not agree with this contention.
When the plaintiff entered upon his duties as delivery carrier on this particular route in April, 1903, its length was estimated to be 20J miles. In October, 1905, the distance, by scaling from the postal map, was increased to 21f miles, and in September, 1909, by actual measurement, it ivas found to be 22TV miles. During this long period of time plaintiff discharged the duties as such carrier without complaint or protest, and since the true distance was ascertained, as above stated, he has been paid accordingly. It is therefore apparent that he has no legal claim for a higher rate of pay than he has already received under the established regulations of the Post Office Department.
As we have above stated, the route which claimant served was from 20 to 22 miles, “ as shown by the records of the department.” The distance between intervening points along the route of travel is there expressed in miles, half-miles, quarter or eighth of a mile and not in the more accurate measurements of an engineer, which the findings also show are expressed in some instances in so many hundredths of a mile.
In adopting its method of expressing distances it is evident that the department was using the phraseology in *486 which people generally speak of and express distances along a road, and this fact is itself significant in that it indicates that the routes “ as shown by the records of the department ” were established from data procured from available sources, such as county maps, section or quarter-section lines, estimates of persons acquainted with the route of travel, etc., and were not established from the more accurate data which actual surveys would have developed; and the use of such phraseology was not only not misleading to the rural carriers, but was, we think, a fair notice to them that in accepting or serving a particular route the distances were to be known from the records made as above stated. There would therefore be no reason for making a variation of 2 miles in the length of the route if its distance was accurately known, and certainly there would be no field of operation for the expression, “ as shown by the records of the department,” if this expression were subject to the change in each case which an engineer’s measurement would fix for the distances involved.
But the claimant insists that, notwithstanding what we have said, when the classification of his route, according to the records of the department, was from 20 to 22 miles, yet if its actual measurement exceeded 22 miles (as in his case by one-tenth of a mile) he is entitled to be paid upon the next succeeding classification, or upon the basis of 22 to 24 miles. The inconveniences which would result from yielding to this contention, not to speak of the invasion of the discretion vested in the department as to classifying routes, are obvious. To illustrate: The effect of claimant’s contention is that a rural carrier, having a route from 20 to 22 miles, must travel 20 miles before he is entitled to the classification 20 to 22 miles; or, in other words, he would exclude 20 and include 22 in his computation. He must then travel 21 and all of 22 miles before he enters the next class. This next classification is 22 to 24 miles, and therefore the carrier traveling it travels all of 22 miles, and passing the end of 22 miles, actually enters upon and travels part of the twenty-third mile or perhaps to the end of the twenty-fourth mile. But when he has traveled 22 miles and before actually en *487 tering upon the twenty-third mile he comes to the end of the 22 miles, and this end is also the beginning of the twenty-third mile; that is to say, the end of the twenty-second mile is a point which marks at one and the same time the end of one mile and the beginning of another, and (being a point) it is without length, breadth, or thickness. When this point is reached 22 miles have been traveled and when passed 22 miles have been exceeded. Now, let us suppose that the actual distance exceeds 22 miles by an inch, or by a foot, or by a yard, or by a rod; would this small departure from the department figures be determinative? Such a difference could readily occur by the use of accurate instruments measuring different sides of a given route of travel; it could readily occur in long distances between the measurements of good engineers. And if such variations occur, as they may in hundreds of routes throughout the country, are the courts or the department to be the -final arbiter of what is to be done in such cases ? If it be said that in small differences like that illustrated the maxim de minimis lex non curat could be applied, we inquire in whose interest should the maxim apply — that of the carrier or of the Government? And the fact remains that if the actual and accurately measured distances are to be accepted and be controlling, notwithstanding the department estimates or approximations, then it would seem that any distance, however small, by which the route of travel exceeds (as in this case) 22 miles, would place the carrier in another class. Such a view, it seems to us, is altogether unreasonable, would deprive the department of a discretion which is essential in the proper conduct of a great system, such as the rural mail carrier system is, and would lead to complaints and differences which would injuriously affect the system itself. We think it very probable that the department had these considerations in view when it established the routes and fixed the distances, with the wise restrictions, that they were “as shown by the records of the department.”
There is still another fact which we think is of weighty consideration in this case, and that is that the classification of salaries as to the distance traveled was not an inflexible *488 one. On the contrary, the Postmaster General, in his report to the Assistant Attorney General for this court, says:
“ The schedules stated above have, for the most part, been followed, but in a few instances the department has, in the exercise of its discretion, fixed salaries at rates at variance with those set forth in the schedule when the conditions seemed to warrant such course. It has been and is the view of the department that the discretion authorized by virtue of the several acts quoted give the Postmaster General a wide latitude in adjusting the salaries of rural carriers, so that, irrespective of the schedules adopted for general use, a carrier’s salary might be increased or decreased if conditions found to exist justified such course, or decreased as a disciplinary measure, the only limitation being that the salary should not in any case exceed the maximum fixed by the several acts.”
Hence, while it may be and doubtless is true that there were no conditions in this case which would have justified or moved the Postmaster General to have decreased the salary of the plaintiff, notwithstanding the length of his route, yet as he might have done so, the plaintiff is prevented from relying .upon the distance classification, as governed by actual measurement, as a rule of law to determine the amount of his compensation.
In view of the facts in this case as disclosed by the findings, the several statutes hereinbefore quoted, and the regulations and practice of the Post Office Department relating to the Rural Free Delivery Mail Service, we think there is nothing due the plaintiff, and his petition should be accordingly dismissed, and it is so ordered.
Booth and Barney, J. J., dissent.